The next case for argument is Tchoukhrova v. Ashcroft. My name is Jonathan Montag, representing the Tchoukhrova family. This case, Your Honor, is not a case about credibility, fortunately, because the immigration judge explicitly found that Mrs. Tchoukhrova was credible in all aspects of her testimony. It's also not a question about whether or not there's a social group, because the immigration judge found that they belonged to a particular social group, and that was a family with a handicapped child. So that issue in this case— find the lesser social group of the handicapped child, or even less than that, those classified as imbeciles by the state. And is there any reason to have to look to the family rather than to the child? There is one reason, Your Honor, and that's because if the court were to grant asylum to the child, that wouldn't help the parents. The parents could be deported from the United States. There's no right of parents to remain if the— No, Your Honor. —it's sort of a reverse derivative status? No. There's not in the regulations. The regulations are in the blue brief, and they only follow to the children and spouse. These three applications are separate and independent? No. Or are they— I know at least they're not derivative, as you said, either way. Is that right? The derivative in that if mom's petition is granted and she's given asylum, then the father and the child can stay in the United States. But there has never been a specific separate application for asylum filed by the son. Now, all along in these proceedings, from the very beginning— There hasn't? Then the only one we can consider is the mother's. Is that right? That's the one before us. There's something else I want to add to that. All along, the immigration judge, the immigration service, has always considered this to be the boy's petition. The information is predominantly about the boy. Now, whether the first five lines biographically are about the mom or the son, no one's ever stopped and said, Mr. Kroger, I think you need to go file an asylum application for your son. And no one's ever made a decision that's based only on the parents and not on the son. The immigration judge never said to the family, to their attorney in the immigration court— Well, they describe in the BIA decision, they describe the mother as the lead respondent. Right. Now, lead normally means that there's more than one. I agree. And I think that's how it's always been construed. And so I don't think the Court should feel constrained by the fact that there's not three separate applications. And also in the BIA decision, it says respondent Victoria Chukrova and respondent Dmitry Chukrova and respondent Evgueni Chukrova. So there seem to be three respondents who were, I gather, three people who are seeking asylum. And that's the way it seems to me that the government's treated it. And I think it's 100 percent true that the government, even in their red brief here, has never made any distinction between the boy and the parents. But as a technical matter, there's only one asylum application filed, and that's for the mother. And if this Court were to grant Evgeni asylum, that's the boy, then the parents are high and dry. And so Evgeni, obviously, because... Hard for me to... Is there a case that says if a child is granted asylum, he's got to stay by himself? There's a circuit split on the issue. And the Ninth Circuit has not been extremely explicit on the issue. The Sixth Circuit has. So we could all move wherever that is, and we'd have a good time. But I think the problem is because of the ambiguity, it's necessary to avoid... Well, that's why we're here. We're here to clear up ambiguities. Right. To avoid ambiguities, the Court should find that this is a family... Well, why do we have to do that? I don't understand that. If you say it's unclear and it's ambiguous, and another circuit says that the child's the parent, is that what you're saying in the Sixth Circuit? Yes, Your Honor. Well, then why aren't you asking us to say that also? Well, there are two reasons. One is because the immigration judge found that this is a family and a social group. And so we don't have to create new law here in that issue. And that's basically the reason why. There's the persecution to the boy, and also because there is case law in the circuit that says that the suffering of one member of the social group can be, in a way, imputed to the rest of the social group so that the suffering of the son would help bolster the parent's application for asylum. OK. That's a nice argument, not necessarily for the social group, but it's an argument for saying that if you find the son is a member of the group and that he is a victim, that then that goes to the parents as well. Exactly. And there is case law for that. And the board, for example, on the female genital mutilation cases, has found that because the daughter is going to be sent back to the country and this is going to happen to her, that there's a persecution of the parents. And they've been allowed to stay there. Well, then that doesn't sound so unclear or ambiguous, does it? Well, I'm not trying to dissuade the Court from going that way. I'm just trying to make the Court give – I just want to win the case for this poor family any way that I can. It's any way that you can, right. Excuse me. Yes. So if you want to do it the hard way, I'd be happy to do it the hard way. I'll brief that issue if the Court wants. Well, no, you're willing to do it either way, either with the social group being the relatives of the abused or the disabled child or the social group being the disabled children. Yes, Your Honor. I also – there also was a political dimension to the case, too. And the immigration judge didn't touch on that. But this – Mrs. Truecroft and her husband were fighting a political system in which – Well, we only have a few minutes, so let's not – Oh, I'm sorry. So anyway, the issue then becomes persecution of either Evgeny or the social group. And I think in the case of Evgeny, it's manifestly clear that he would be persecuted in Russia and he was persecuted in Russia. To be mistaken for or substituted for medical waste because of your physical condition is a – as a pattern and practice of the government or as their policy, I think if any other kind of social group or any other individual were treated as medical waste per se, that would be persecution. And the record is replete with information about how children who are handicapped in Russia are tethered to their beds, they're not treated humanely, and they're not treated in a way that will help them to live. They're compelled to be separated from their parents and institutionalized. I think that any other kind of person treated that way would be considered a persecution and it would hurt Evgeny as well. Let's assume that this is persecution. What's your best case that, you know, either that this is a protected group or it's on the count of one of the enumerated grounds? Well, the social group is one of the enumerated grounds. So if he – And what's the best case you have that supports that? Well, a social group the board defines as an individual who's a member of a group who share a common immutable characteristic. And so obviously the boy's handicap is an immutable characteristic. Now this circuit is much more generous. It doesn't require immutability. It requires that the people be closely affiliated with each other or actuated by some common impulse or interest. And it can be a voluntary associational relationship. So that's much broader, but we don't even need to go to a broader definition because by mere virtue of the fact that he's handicapped, he belongs to this social group of people who are – you know, handicapped is a protected social group. No, but I also have the fact that the immigration judge has concluded that it is a social group, that the family is a social group. You mean in this case? Yes. He says, I find that this family is a social group. The family is a social group? Yes. That's not the social group you're contending for, is it? Well, you mean the family is a member of a social group? Not that the social group isn't the family. No, no. Instead of families. Right. The family belongs to a social group. I find that the respondent or family and child – What page are you on? That's on page 59 of the record. 59? Yes, Your Honor. Go ahead. I find that the respondent or family and child did suffer harm in Russia. It does appear that this harm was a result of the fact that the respondents are a member of a particular social group described above. And the BIA doesn't dispute that. The BIA, in its decision, states only that it doesn't find that there was – So the IJ's ground of denying was because the treatment didn't rise to the level of persecution. Exactly. And the reason he came to that was on his speculation that Russia would treat their handicapped children wonderfully if only they had the money to do it. But nothing in the record supports that speculation. In fact, the record indicates – Well, does it matter? Does it matter whether that's the reason, the motive? I mean, if you persecute somebody, does it matter whether it's for lack of funds or because you don't like them or there's an animus? Is the motive relevant if the facts are that the person qualifies as someone who's being persecuted? I think if the – I agree with the Court that if somebody's treatment is deemed to be persecution, then economic motives are not relevant. It's kind of their excuse because they are being persecuted if you're saying that their treatment is persecution. They are being persecuted because of their disabled trait and membership in this disabled family group. They are being persecuted. And it's really saying that just because they're persecuting them on account of enumerated ground for something unrelated, you know, because they don't have money, they should be excused because they don't have money and that allows persecution. I can't think of an analogous situation. I'd also like to add to that comment that the Human Rights Watch in the record shows that these are not necessarily the most economical ways to treat handicapped children. So it's not a budgetary issue in Russia. It's a social and political decision that they want these people isolated from the society because they did mention in the Human Rights Watch that they could just send these children home to their mothers and fathers without institutionalizing them and that would be cheaper for the society. But as a society, their societal goal or their societal de facto behavior is persecutory. Mr. Montague, I've got to ask you one more question about the definition of the social group. On page 58, the second paragraph, the IJ says, I think this is what he's referring to, respondent claims that the persecution was on account of the fact that the respondent and her family are members of the particular social group known as family members of children who are disabled, right? That's a social group. Yes, sir. Now, does that social group include the disabled child himself? No. I would suggest to the court that you couldn't be a member of that social group unless you had a member in your family who was handicapped. Unless there's a disabled child. Yes, so that he helps define the social group. Without him, there wouldn't be one. Well, okay. All right. Let me ask you another question. This imbecile status, where does that come from, this designation of children with conditions like this child as permanent imbeciles? The State Department report says it's a governmental policy to declare them as such, and the Human Rights Watch report also under- It's based totally on the reports, right? Yes, Your Honor. I believe the mother testified as well because she experienced the designation to her son. The mother testified that her son was so designated? I believe she did. I'd have to go dig it up, unfortunately. But it was corroborated by the two independent sources as well. Even if she didn't say it or didn't know it, I think I'm 99% sure she said it as well. All right. Thank you. Thank you, Your Honor. And my time has played. Thank you. Good morning, Your Honors. My name is Frances McLaughlin. I'm here representing the Attorney General, John Ashcroft. I'd like to start, actually, with the social group issue because there seems to be some confusion. The government's position is that it is clear that this immigration judge did not make a determination that this, however you want to define it, family members who have a member of their family who is someone who is disabled. The judge assumed without deciding. He said they are making the claim that they are members of a particular social group. He said it appears, and then he went on to the real meat of this case about persecution. I think it's very important to actually read the transcript of this case. The judge even says, I think it's between AR 161 to 164, this is a case about persecution. No, there's no legal analysis. There's no doubt that that's the basis of his decision. He found that this didn't constitute persecution. But counsel showed us a part of his decision which said that he found that there was a social group. I'm trying to find where that place is. I think it was AR 59, Your Honor. 59. But our position would be that that's not a finding, particularly on something that would be as new as one of Your Honors asked. Is there any case law to support that family members or disabled people count as a social group? The judge said it appears. There's no legal analysis in this opinion about social group. Importantly, there's no evidence put on by either side about social group. There's no argument about social group. If this court ---- It's a legal question. You're right, Your Honor. It is ultimately a legal question. And given that, it would be the type of question that would be entitled to substantial deference from this Court. But here, that determination was not made. I mean, under Aguirre-Guerri, legal determinations as to the meaning of ambiguous terms, NAI and A. Right. That's limited somewhat to where to which legal interpretations a court owes deference to the administrative agency. But here, that's not what we're arguing about here. Okay. We're asking whether or not I.J. made the legal determination that there was a social group. And here, the judge did not. So I infer your position is that the only thing that I.J. found was that whatever happened didn't amount to persecution. You're exactly right, Your Honor. That is the position. And that's acceptable.  point of persecution is not met. So if we reverse the I.J. on that account, we can't go any further. We just have to send it back. That's exactly right, Your Honor. This case would have to be remanded under Ventura for one, for the floor, to determine whether or not this was a particular social group, to determine whether or not this was a protected ground. The other hand. To determine whether it was on account of. The other hand, if we disagree with you and find that he did decide that this is a protected social group, we could review that. You could, but I don't think that that decision would be supported by this record. There, again, there is no legal analysis as to social group. It is assumed without deciding. It's clear, particularly when reading the transcript, that the judge did not focus on the social group issue, that this was a persecution case. But you haven't challenged that finding. If it's a finding, you're relying on the fact that it's not a finding. Yes. Our position is that it's not a finding. Not a finding. And if we disagree with you, you're stuck with the finding. Because you haven't appealed the finding, because you don't believe there is one. Right. Okay. Yes. I would say there would not be support for the position that this is a finding as to social group. And so if you were to disagree with the finding as to persecution, under Ventura, this case would need to be remanded for the other elements of the asylum claim. Unless we found it was a finding on social group. Then there wouldn't be anything to remand. Of course, it's a, you know, I think these boilerplate decision by the BIA is ambiguous as to what it found, because it refers to the I.J. decision was not an error. And then it refers to the whole string of everything under the statute, right? You're right, Your Honor, it does. That she was a fast persecution on a kind of political thing, a membership in a particular group, or that she had a well-founded fear or faces a clear probability. So they decided everything. That she didn't meet any of those. Yes. So the BIA decided it. So we can review it. It did the entire, kind of did a sentence describing her claim. I know. And they shouldn't do that boilerplate if they're not reviewing anything. They should say, well, the I.J. found that she did not suffer past persecution, and that's adequate. And so we dismiss the appeal, right? But they went on to refer to, you know, on a kind of political opinion, membership in a group, well-founded fear, and so forth. So presumably, they decided all those issues. I don't think that that can be presumed, Your Honor, from that sentence in the BIA's decision. Presumably, they say that. Read it literally. Read it literally. Yes, it can also just be read as a synopsis of the claim. I mean, it's clear that the immigration judge's opinion was about persecution. He actually says that over and over again. No, but the BIA says we are not persuaded that the I.J. decision was an error in finding that, and that includes that she was a victim of past persecution or that it was on account of membership in a particular group. They say that. The I.J. was not an error in finding that. So we can review that determination, right? Yes, but it also cites Burbano, which stands for the proposition that the board can incorporate and rely on the findings and analysis of the immigration judge. And that's what's important here is the analysis is just about persecution. If they had stopped after saying Burbano, that would be okay, but here they go on. It goes on. Hey, counsel, we're doing 24 of these cases in 12 days. This is unusual language where the BIA actually announces a rule of law. Most, I'd say 90 percent or more of the cases we're reviewing, we get the board affirms without opinion the results of the decision below. And that says just read the I.J. decision. We're not saying anything else, and so we review the I.J. decision. This BIA opinion is strikingly different. And that it's not an AWO. You're right. It's not an AWO, but I think by reliance on Burbano, it does incorporate the analysis of the immigration judge. I'm not – there's not anything further I can say except for that it is very clear from the opinion and from reading the transcript that to this judge, this was an opinion about persecution. You certainly made your position. So that is, you know, and I think if it's an unclear issue under Ventura, it needs to be remanded. Can you just tell me what did you say Burbano stands for? Actually, Burbano, the initial point of the case was about discretionary decisions, but it also makes the point that the board can, you know, do a short statement type opinion, agreeing with the immigration judge, and therefore can be, in essence, relying on the analysis and findings of the immigration judge. Sort of the precursor of streamlining, huh? I don't know. That's all before my time. But I – that social provision, I mean, that's just very clear to us that if you were to disagree, which I'm getting the sense your Court might, but that's an issue that needs to be remanded under Ventura. That has not been given the analysis that it would deserve. Well, the fact that it's not given the analysis it deserves is not surprising, given that this is a board action. All we care about is whether they decided it. Whether they did it with the kind of analysis we would like the board to engage in is a different question, and we don't, unfortunately. I think there's ample evidence in the transcript that he did it without deciding it, especially if you look at AR 161 to 164. Why don't we look at his ruling at 59 where he says, I find that the respondent and her family and child did suffer harm in Russia. It does appear that this harm was a result of the fact that the respondents are members of the particular social group described above. And then, so it's saying I'm finding in favor of the petitioner on these two points. The Court, however, concludes that it doesn't rise to the level of persecution. So now I'm finding against you on this next level. To me, it can be more clear that he's made a legal ruling on this. And, in fact, it's actually more clear than many of the IJ decisions that we've been seeing. Like the last one we just talked about, that wasn't clear at all whether he was what he was saying or what was the basis for what he was saying. This one's very clear. Now, you say it's insufficient because it doesn't contain legal analysis. Well, how many of these do? It also has the it appears. That would be our position, Your Honor, that by saying it appears. He doesn't say it appears. It does appear. That does makes it a stronger assertion of fact. Your Honor, our position would be that under Ventura it hasn't been decided and needs to be decided in the first instance by the agency. Ventura applies where the court hasn't made a factual finding on a legal element of the asylum claim. It doesn't apply when we're talking about a legal ruling that we're equally capable of making, interpreting the statute. Yes, but there would be facts that would need to be determined. There was no evidence put on us, the social group. I only have 20 more seconds. I'd actually like to get to the point of the judge's ruling about persecution. If I may, I can continue on the social group issue, but I have used, you know, most of the time on that. And I do think it's very important to recognize that while this situation is heartbreaking and sad, it is not legally persecution under the INA. It's discrimination, and there is ample case law, but discrimination does not amount to persecution. To decide that this amounts to persecution. I don't think it's necessary to tell us it's heartbreaking and sad when you don't plan on doing anything about it or you don't care. So what? It doesn't matter to the government whether it's heartbreaking and sad. Why are you telling us that? Because I think that it's obviously heartbreaking and sad, and it is a sad story. Well, if it's obvious, you don't have to tell us. I apologize, Your Honor. Maybe it's just my own sense that it was a bad story. The sense of injustice, perhaps? Your Honor, we're here to discuss the law of persecution. That's right. Not whether it's heartbreaking and sad. And these facts don't rise to that. No. These facts don't rise to the level of persecution. It evidences discrimination, but there is not a legal basis, even when questioned, Petitioner's counsel could not give a legal basis that these facts rise to the level of persecution. Well, let me just take a minute to explore that. Because I think what you're doing is conflating the persecution definition with the on account of prong. You're saying, well, it's not persecution because it's just discrimination. Well, it's discrimination because the person's handicapped. What if the U.S. government took you and tethered you to a bed and wouldn't let you out for some other reason, let you lie in your own waste and become human waste? Would you consider that persecution? Your Honor, this case isn't about me. And there's not evidence in the records that that particular set of facts happened to this petitioner. That's a really good answer. I mean, you're hypothetical. Let's say you're co-counsel. Another person, for whatever reason. Would you think that that was cruel and inhuman treatment that is offensive to the ordinary good conscience? It would not be up to me to decide. It would be up to an immigration judge. That's the law. Well, you're supposed to be explaining to us what your immigration judges would do, how they'd handle that case. Right. The immigration judge here looked at those facts and determined that given the case law that defines persecution as more than harassment, more than discrimination, more than basic suffering, persecution is more than something that is repugnant to our sense of values and our sense of human dignity. It has to be more than that to be persecution. Obviously, these acts can be considered repugnant and horrible, but that does not mean they rise to the level of persecution under the INA. That is a determination for the immigration judge to make. And that determination is the final decision. Why are we here? To see if it's correct? Why are we here? You're here because it's been reviewed. A petition for review has been filed by the position. Well, we don't have anything to do because it's a decision for the immigration judge to make. That's what you're telling us. Right. And in order to reverse it, there needs to be lack of substantial evidence in the record, which is not the case. The record has to compel a contrary conclusion. There's no instance of that. Well, it depends on what you think persecution is. That's a legal question. If you're classified as an imbecile and treated as an imbecile and deprived of basic human rights for your life, an immigration judge might say that's not persecution. And a more compassionate court might say it is and might say it's compelled, depending on what you believe the term persecution means. Well, I think in this case the judge was applied. It actually said on humanitarian grounds that he would grant this. But he felt constrained by the law. This is, again, towards the end of the transcript. That was his view of the law. I understand that. He may have been mistaken as to the law. Right. And that is for this Court to decide, given the law. And Petitioner has not been able to come up with a case, even, that can overlay onto these set of facts to show that this is persecution, whereas there is ample case law that discrimination is not persecution. Behavior that we might consider repugnant, a society's way of, you know, because the medical care in the United States is better than this person would receive in Russia, because we may not agree with the medical care that's given over there, that's not persecution under the Act. If so, that would broadly expand the number of people who would be eligible for asylum, and that would not be a decision for this Court to make. That would be a political decision. That is what the IJ found. It was constrained by the law and the definitions of persecution. Persecution needs to be ---- Where is in the law, does it say, that labeling somebody an imbecile, depriving him of his basic rights, and treating him in the way that imbeciles are treated in Russia does not constitute persecution? What case is that? I think you can look to cases such as Ghali and Fatin, F-A-T-I-N. Both contain language that repugnance to a government policy, you know, does violation to our concepts of freedom is not sufficient to label something persecution. Well, obviously not. Most countries in the world have systems that are repugnant to our freedoms. The wonderful freedoms we have here that we're bringing to other nations. Most nations don't have that. That doesn't mean, though, that it's persecution. But that has nothing to do with whether being labeled as an imbecile and treated accordingly does constitute persecution. You said counsel didn't give us any cases that say it does. And I asked, do you have any cases that say it isn't? Yes, I do. When there's government policies that we disagree, we might disagree that that would, you know, not be an appropriate label, but that's up to the Russian government. To me, that alone does not raise us to the level of persecution. I guess the point is, do you have any specific cases dealing, I mean, are there? Is this just a case of first impression in the country dealing with the treatment and labeling of imbeciles in Russia? I think that it is. I have not been able to find it. But I think there is no case law on this, whether it's near discrimination or whether it does go down the line or up the line to persecution. And that's something we have to decide. It is. And I think it's also important here that an element of persecution is also the well-founded fear. And I think it's important to look at the immigration judge's decision here that there was nothing but speculation put on as to whether or not these Petitioners had a well-founded fear of persecution should they return. They said they would be killed or imprisoned. The youngest Petitioner lived in Russia for nine years without being killed or imprisoned. That speculation is conjecture. The reason to stay in the United States is, of course, because of the medical care. The argument is you can't ever fear being killed unless you've been killed, and then it's too late to file the application. No, Your Honor. There's never been any fear of being killed. Well, you said he hasn't ever been killed. He's lived there for nine years without having been killed. Without having been killed. No, Your Honor. Just a slight misstatement in my speaking. Obviously, there were no threats of being killed. I apologize for that. But there's never been any threats that he would be killed or imprisoned or that his mother or father would be. There's basically just speculation and conjecture as to the well-founded fear prong. Given that, too, this Court can be – this Petitioner has not satisfied his burden as to the elements of asylum. Thank you, counsel. Thank you. I just might take another 30 seconds or so. I think that the Bourbono case mentions right at the beginning that it takes a de novo look at legal issues in a case so that it's not necessarily just a short question. Could you hand us up the site of the case and we'll get a copy of it? Bourbono? Yeah. We'll get the site and we'll get a copy. It's cited in the BIA decision, isn't it, here? Right at the BIA decision. And I just wanted to add about persecution, that in addition to the manifest persecutions that the boy would face if he had to live in a situation where he was institutionalized, the mother's separation from the child and having to view how he's going to be treated for the rest of his life and the pressures that will be continuously put on her if she resists should also be considered persecutory to her and to the father who incidentally lost his job. And with that, I have nothing else, Your Honor. All right. Thank you. Thank you, counsel. The case just argued will be submitted. The court will stand and recess to the day. All rise. This court for this session stands adjourned.
judges: Reinhardt, Tashima, Wardlaw